UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HARBOURVIEW YACHT | : | |
| SALES, L.L.C., | : | HONORABLE JOSEPH E. IRENAS |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. 04-1857(JEI) |
| v. | : | |
| | : | |
| OCEAN YACHTS, INC., | : | **OPINION** |
| | : | |
| Defendant. | : | |

**APPEARANCES:**

HERRICK, FEINSTEIN LLP
By: Patricia M. Graham
210 Carnegie Center, Suite 102
Princeton, New Jersey 08540-6232
     Counsel for Plaintiff

BRIAN E. RUMPF, Esq.
960 Radio Road
Little Egg Harbor, NJ 08087
     Counsel for Defendant

**IRENAS,** Senior District Judge:

This case involves the sale of an allegedly defective yacht named the Andrea Grace from a yacht manufacturer, Defendant, to a yacht dealer, Plaintiff.[1]  From February, 1998, through 2003, Plaintiff, HarbourView Yacht Sales, L.L.C. ("HarbourView"), was an authorized dealer of boats manufactured by Defendant, Ocean Yachts Inc. ("Ocean Yachts").  HarbourView and Ocean Yachts

---

[1]  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and venue is appropriate pursuant to 28 U.S.C. 1391(a).

entered into a "Dealer Agreement,"[2] effective August 1, 1999, to July 31, 2000.[3]  Under the Dealer Agreement, Ocean Yachts appointed HarbourView as its dealer to purchase Ocean Yachts' products for retail sale to HarbourView's customers in North Carolina, South Carolina and Georgia.  When HarbourView purchased the Andrea Grace there were several problems with it, including a vibration problem and numerous other factory deficiencies.[4]

Before the Court is HarbourView's motion for partial summary judgment on Ocean Yachts' second affirmative defense, which alleges that the sale of the Andrea Grace is covered by the terms of Ocean Yachts' 5&1 Warranty Protection Program.  Ocean Yachts cross-moves for summary judgment on all counts of the Complaint (Counts I, breach of contract; II, breach of implied warranty of merchantability; III, breach of express warranty; and IV, breach of warranty of fitness for a particular purpose).

---

[2] The agreement is entitled "One (1) Year Exclusive Ocean Yachts, Inc./Riviera Yacht Distributors, LLC Dealer Sales and Service Agreement (Stocking Dealer), Eastern Region, Dealer Exclusive Territory #3 (South Carolina)."

[3] HarbourView is the successor in interest to Riviera Yacht Distributors, Inc.

[4] The factory deficiencies included defects in the flybridge console, the installation of lead bars in the prop tunnels, the stowage lockers, poor caulking, cracks in the safety stanchion mounting pads, improperly fitted windows, misshapen window frames, various leaks and water incursions, poorly installed carpet, and an improperly installed generator.  (Graham Dec., Ex. L at 47:24-28; 50:6; 64:11).

## I.

In early 2000, Ocean Yachts proposed to sell to HarbourView a 70 Super Sport, 2001 model, diesel-powered vessel named the Andrea Grace ("the Boat").  (Compl. ¶ 8).  That April, the two co-owners of HarbourView inspected the Boat at Ocean Yachts' Factory in New Jersey.  (Compl. ¶ 8).  They allege that they discovered various defects while inspecting the Boat, including a severe vibration problem and problems in the cockpit, flybridge and other areas of the Boat.  (Compl. ¶ 8).  Several days later, Mr. Finney, Ocean Yachts' Vice President of Sales and Marketing, orally represented that the alleged vibration problem had been corrected.[5]  (Comp. ¶ 10; Def. 56.1 Stat. ¶ 5).  At some point prior to May, 2000, HarbourView agreed to purchase the Boat.[6]

The sale took place in accordance with the Dealer Agreement, which was signed by both HarbourView and Ocean Yachts.  The

---

[5] The parties dispute the precise language Mr. Finney used in giving this assurance.  HarbourView alleges that Mr. Finney stated the Boat "now runs smooth," (Compl. ¶ 10), while Ocean Yachts contends that Mr. Finney said the Boat was running within acceptable parameters.  (Supp. Weisz Dec. Ex. 1 at 107:22-25, 108:1-3).

[6] HarbourView and Ocean Yachts disagree on the date of purchase.  In fact, Ocean Yachts itself provides inconsistent dates of purchase.  In its statement of material facts, Ocean Yachts claims that Harbourview purchased the Boat in April, 2000. (Def. 56.1 Stat, ¶ 5).  In its reply brief, however, it states that "the Andrea Grace was purchased no later than March 8, 2000." (Def. Reply Brief. p.9).
    HarbourView contends that it agreed to buy the Boat several days after the inspection in April, 2000, when Mr. Finney called and assured HarbourView that the vibration problem was fixed.

Dealer Agreement contains the mutual responsibilities of Ocean Yachts and HarbourView, and is governed by the Uniform Commercial Code ("UCC").  (Graham Dec. Ex. C ¶3(aa)).

   In addition to the Dealer Agreement, Ocean Yachts gave HarbourView a separate two-page document, the Ocean 5&1 Warranty Protection Program ("5&1 Warranty").  (Id. at Ex. G).  The second paragraph of the 5&1 Warranty, entitled "Application of Limited Warranty," reads,

> Ocean Yachts Inc.'s Limited Warranty is extended solely on new Ocean Yachts sold and delivered to the original purchaser by an authorized Ocean Yachts, Inc. Dealer within eighteen (18) months of manufacture and is transferable to subsequent purchasers during the warranty period.  The limited warranty is <u>not</u> extended to an Ocean Yachts used for commercial purposes, and the obligations of Ocean Yachts, Inc. under this Limited Warranty shall cease if the Ocean Yachts is hired, chartered or otherwise placed into commercial usage.

(Id.).  The 5&1 Warranty provides a five-year limited structural hull warranty and a one year limited equipment warranty.  It also includes disclaimers for express and implied warranties.  The last page contains an Ocean Yachts Purchase and Warranty Registration card ("Registration card") that purchasers are required to sign within thirty (30) days of sale/delivery of a boat.  Directly above the signature line, the Registration card reads, "*my dealer has given, explained, and I have read and hereby acknowledge the above Ocean Yachts, Inc. Warranty."* (Graham Dec. Ex. H)(emphasis in original).  HarbourView did not

complete or sign the Registration card upon purchase, nor did it send the card back to Ocean Yachts.

In May of 2000, HarbourView received the Boat from Ocean Yachts.  (Compl. ¶10; Graham Ex. K. at 5-14).  Later that month, HarbourView's captain experienced various problems with the Boat, including a vibration problem, when he sailed it to South Carolina for resale. (Compl. ¶ 11).  HarbourView reported these problems to Ocean Yachts, which Ocean Yachts did not completely repair until April or May of 2001.  (Compl. ¶ 12; Def. R. 56.1 Stat, ¶ 12; Pl. Response R. 56.1 Stat. ¶ 12).  HarbourView asserts that it has been unable to sell the Boat because Ocean Yachts took 12 months to repair it, during which time the Boat received a negative reputation.[7] (Compl. ¶ 13).  Harbourview brought this action on April 21, 2004, seeking damages it allegedly incurred arising out of its purchase of the Boat.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

[7]  HarbourView asserts that in June, 2000, while displaying the Boat to potential customers, the Boat vibrated terribly and several parts either fell off or loosened.  HarbourView received no offers for the Boat on that occasion.  (Compl. ¶ 13).

is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'- that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case.'"  *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).


### III.

In its motion for summary judgment Ocean Yachts claims that its only warranty to HarbourView, the 5&1 Warranty, disclaimed any express warranties as well any implied warranties of merchantability or fitness for a particular purpose.  HarbourView argues that this warranty and its limitations apply only to retail customers and moves for summary judgment on Ocean Yachts' second affirmative defense, in which it asserts that the sale of

6

the Boat is governed and limited by the 5&1 Warranty.

In determining whether the 5&1 Warranty and, particularly, its disclaimers are binding on HarbourView, the only relevant documents are the Dealer Agreement and the 5&1 Warranty itself. HarbourView signed a Dealer Agreement each year it was an Ocean Yachts dealer.  Ocean Yachts contends that the Dealer Agreement incorporates by reference the 5&1 Warranty and subjects HarbourVIew to its limitation.

The dispute hinges upon the meaning of Section 3 of the Dealer Agreement, which reads in relevant part:

3(v)  <u>MANUFACTURER PRODUCT WARRANTY</u>

(1) MANUFACTURER will provide its 5&1 Warranty and offer Manufacturer's 5&1 warranty/ program to the DEALER'S retail customers.  Approval and payment of warranty claims to DEALER are based strictly upon MANUFACTURER'S then current warranty procedure.  MANUFACTURER'S warranty administrator must approve warranty items costing MANUFACTURER more than $200.00 per item.  To the extent that Warranty claims are less than $600.00 per boat in the aggregate factory approval is not required.

(2) DEALER agrees to notify and apply to MANUFACTURER "warranty claims administrator" for approval of any claim under the MANUFACTURER 5&1 warranty within three (3) working days in the case of a warranty request by a retail customer and within thirty (30) days of discovery of defect if a DEALER (stock) warranty claim.

(3) <u>OEM SUPPLIER WARRANTY CLAIMS</u> It is the intention of MANUFACTURER to help resolve any claim made under any warranty extended to the retail purchaser whether or not said warranty may be that of MANUFACTURER.  DEALER shall

> arrange for warranty of an OEM supplier
> directly with supplier if authorization can be
> arranged immediately without assistance of
> MANUFACTURER.  DEALER agrees to notify
> MANUFACTURER and request warranty assistance on
> OEM items should approval or denial not be
> resolved within ten (10) working days after
> application to OEM supplier.

(Graham Dec. Ex. C).

According to the principles of contract construction, a court must determine whether a contract is ambiguous. *Nester v. O'Donnell*, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting *Kaufman v. Provident Life and Cas. Ins. Co.*, 828 F. Supp. 275, 282 (D.N.J. 1992)).  If an ambiguity in a contract exists, meaning there are at least two reasonable interpretations, the issue must go to a jury.  *See Sanford Inv. Co., Inc. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999); *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir. 1999) (holding a court can only grant summary judgment on an issue of contract interpretation if the contact has only one reasonable interpretation).  In evaluating whether a contract is ambiguous, a court should "consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation."  *Teamsters Indus. Employees Welfare Fund v. Rolls- Royce Motor Cars, Inc.*, 989 F.2d 132 (3d Cir. 1993); *Restatement (Second) of Contracts*, § 223 cmt. b (1981).

8

Because HarbourView and Ocean Yachts disagree on whether the limitations of the 5&1 Warranty apply to a dealer, as well as to a retail buyer, the Court must first decide if either the Dealer Agreement or the 5&1 Warranty is ambiguous.  The Court finds that they are not.  The very first sentence of ¶ 3(v), the section of the Dealer Agreement dealing with Ocean Yacht's product warranty, clearly states that Ocean Yachts "will provide its 5&1 Warranty and offer Manufacturer's 5&1 warranty/ program to the DEALER'S retail customers." Nowhere else in ¶ 3(v) or in the Dealer Agreement is there similar language extending that warranty to HarbourView.

Ocean Yachts argues that ¶ 3(v)(2), in which HarbourView agrees to notify Ocean Yachts within 30 days of its discovery of any "(stock) warranty claim", necessarily refers to a claim under the 5&1 Warranty because that is the only product warranty it offers. This argument fails on two grounds.

First, the very language of ¶ 3(v) distinguishes between retail customer claims under the 5&1 warranty and a dealer's claim under a "(stock) warranty."  Second, the argument that a stock warranty claim must refer to the 5&1 warranty because there is no other warranty offered by Ocean Yachts is simply inaccurate.

Even in the absence of a written warranty, the law provides considerable protection to a purchaser.  Paragraph 3(aa) of

9

Dealer Agreement provides that Article II of the Uniform Commercial Code ("U.C.C") applies to "any questions of law or dealing between the parties that may arise" under the agreement, and the U.C.C clearly offers warranty protections. *See, e.g., Paramount Aviation Corp. v. Gruppo Agusta*, 288 F.3d 67, 71 (3d Cir. 2002); *Alloway v. General Marine Indus.*, 149 N.J. 620 (1997)("By providing for express and implied warranties, the U.C.C. amply protects all buyers--commercial purchasers and consumers alike--from economic loss arising out of the purchase of a defective product."). Thus, reference in the second part of ¶ 3(v)(2) to a dealer's stock warranty claim does not necessarily, or even by implication, refer to the 5&1 Warranty, which is really more of a limitation on warranty protection than it is an extension of such protection. If the parties wished to limit the rights otherwise conferred by the U.C.C. by applying the 5&1 Warranty to HarbourView, it would have been a simple matter to directly say so.

Nor is the 5&1 Warranty ambiguous. A reading of the 5&1 Warranty also demonstrates that Ocean Yachts intended to extend the Warranty only to retail purchasers. For example, the 5&1 Warranty states that it applies "solely" to retail purchasers of yachts sold by an Ocean Yachts Dealer and delivered to the "original purchaser." The attached Registration Card states, "My dealer has given, explained, and I have read and hereby

10

acknowledge the above Ocean Yachts, Inc. Warranty." (Graham Dec., Ex. G).

Common sense also suggests that they type of warranty given to a dealer who purchases a product for resale to the consuming public will be different from the warranty given to a retail purchaser. A Dealer will clearly want (and probably need) a product which is in pristine condition and would be less likely to accept a limitation on the manufacturer's obligation to cure defects which are detected prior to sale.  However, it is more reasonable for a manufacturer to seek a limitation on its warranty obligations to a purchaser who is using (and maybe abusing) the product on a regular basis.

HarbourView has adduced evidence that Ocean Yachts made certain repairs to the Boat which were not authorized by the 5&1 Warranty[8] and argues that these repairs prove the non-applicability of that warranty.  Ocean Yachts counters that these repairs were made as an "accommodation."  While, for summary judgment purposes the Court does not rely on these repairs as proof that HarbourView's rights are limited by the 5&1 Warranty, the making of these repairs is consistent with the business

_____

    [8]  The 5&1 Warranty provides a one-year warranty on parts and associated equipment.  According to HarbourView, Ocean Yachts made repairs after the alleged expiration of the one year warranty in May, 2001.  In addition, Ocean Yachts made gel coat repairs to the Boat, which are expressly excluded by exclusion six of the 5&1 Warranty.  (Krawiex Aff., Ex. 16 (June, 2000, gel repair); Ex 25 (February, 2001, gel coat repair)).

11

realities noted above.

### IV.

Ocean Yacht's motion for summary judgment as to Counts II (breach of implied warranty of merchantability), III (breach of express warranty), and IV (breach of warranty of fitness for a particular purpose) are based on the premise that the 5&1 Warranty applied to the HarbourView.  Because the Court has determined otherwise, the motion as to these Counts will be denied.

Ocean Yachts' motion for summary judgment on Count I (breach of contract) appears premised on the notion that neither the Dealer Agreement, the purchase order, nor other sale documents contain express language specifically obligating Ocean Yachts to deliver a vessel free of defects or in a condition fit for resale.  However, this argument ignores that any warranties provided by the U.C.C. will be deemed part of the sale contract between the parties.  As noted earlier in this Opinion, those warranties have not been disclaimed and, to the extent that the evidence at trial shows that those warranties, express or implied have been breached, HarbourView would have also proven a breach of contract.[9]

---

[9] HarbourView has argued extensively that Ocean Yachts made an express warranty when Mr. Finney allegedly said that the Boat "now runs smooth."  There are may disputed facts surrounding this

12

For the reasons set forth above, Ocean Yachts' cross-motion for summary judgement on the complaint will be denied and HarbourView's motion for partial summary judgment on Ocean Yachts' second affirmative defense, alleging that the sale of the Boat is governed by the 5&1 Warranty, will be granted.  The Court will issue an appropriate order.


Dated: August 20, 2007


s/Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**

---

purported warranty, and this Court need not decide this issue to resolve the pending motions.